*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-FS-0874

IN RE G.W., APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(2024-DEL-000689)

(Hon. Kendra Davis Briggs, Trial Judge)

(Submitted April 9, 2025                    Decided June 18, 2025)

*Shippen Howe* was on the brief for appellant. *Jaclyn Frankfurt* and *Megan Yan* were also on the brief on behalf of the Public Defender Service as amicus curiae in support of appellant.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Marcella Coburn*, Assistant Attorney General, were on the brief for appellee District of Columbia.

*Thomas E. Travis*, of the bar of the State of Kentucky, *pro hac vice*, by special leave of court, *Ann Weber Langley*, and *Richard L. Masters*, of the bar of the State of Kentucky, *pro hac vice*, by special leave of court, filed a brief on behalf of the Interstate Commission for Juveniles as amicus curiae in support of appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and EASTERLY and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellant G.W. challenges a ruling that the District of Columbia Department of Youth Rehabilitation Services (DYRS) was lawfully holding G.W. in custody pursuant to the Interstate Compact for Juveniles

(ICJ), D.C. Code §§ 24-1102, -1104.  Although DYRS subsequently released G.W., the parties agree that this court should nevertheless rule on the legality of G.W.'s detention.  On the merits, the parties agree that G.W. was erroneously detained under the ICJ.  We agree on both points, and we therefore reverse the judgment of the Superior Court.

## I.  Background

The following appears to be undisputed.  G.W. was taken into custody in the District of Columbia on a delinquency matter.  Although G.W. was released in that matter, the trial court ordered that he be detained pursuant to the ICJ so that he could be picked up by Virginia authorities on a Virginia detention order relating to a different juvenile matter.  After the Virginia authorities did not come to take G.W. into custody, the trial court dismissed the ICJ matter.  DYRS nevertheless kept G.W. in custody, interpreting the ICJ to require DYRS to detain G.W. until all of G.W.'s juvenile matters in the District were resolved, unless the Virginia authorities took custody of G.W. before then or consented to G.W.'s release.

G.W. filed a petition for a writ of habeas corpus, arguing that DYRS had no authority under the ICJ to detain G.W. once Virginia failed to take custody of G.W.  DYRS opposed the petition, arguing that its detention of G.W. was required under

rules promulgated by the Interstate Commission for Juveniles (the Commission). (We discuss those rules later in this opinion.) The trial court denied the petition.

## II. Mootness

Virginia subsequently withdrew its detention order, and DYRS then released G.W. from custody. Because G.W. has been released from custody, this appeal is seemingly moot. *See, e.g.*, *Thorn v. Walker*, 912 A.2d 1192, 1195 (D.C. 2006) ("[I]t is well-settled that, while an appeal is pending, an event that renders relief impossible or unnecessary also renders that appeal moot.") (internal quotation marks omitted).

"Although not bound strictly by the 'case or controversy' requirements of Article III of the U.S. Constitution, this court does not normally decide moot cases." *Thorn*, 912 A.2d at 1195 (internal quotation marks omitted). G.W. argues that this case is not moot under the "voluntary cessation" doctrine, which prevents parties from avoiding judicial review by temporarily altering their behavior. *See generally, e.g.*, *In re Bright Ideas Co.*, 284 A.3d 1037, 1042 (D.C. 2022) (discussing voluntary-cessation doctrine). We need not address that issue, however, because in any event the parties agree that this court should exercise its discretion to decide the significant issue presented in the case, which could recur and might tend to evade review. *E.g.*, *In re Macklin*, 286 A.3d 547, 551 (D.C. 2022). We agree with the parties, and we therefore resolve the appeal on the merits.

## III. Analysis

The ICJ establishes procedures to coordinate the resolution of charges when juveniles have matters pending in multiple jurisdictions. D.C Code § 24-1102, Art. I(b). The Commission is authorized to promulgate rules that are binding on the signatories to the ICJ. *Id.* Art. IV(2). The Commission also is authorized to issue advisory opinions interpreting the ICJ Rules. *Id.* Art. XIII(b)(3); ICJ R. 9-101(3).

This case involves ICJ rules that apply when a juvenile is located in one jurisdiction (the holding state) and is subject to a warrant in another jurisdiction (the demanding state). *See* ICJ R. 1-101 (defining "Holding State" as "the state where the juvenile is located," "Demanding State" as "the state seeking the return of a juvenile with or without delinquency charges," and "State" to include District of Columbia). Under the foregoing definitions, the District in this case was the holding state and Virginia was the demanding state. We also note that the parties in this case have treated the detention order issued by Virginia as a warrant for purposes of the ICJ. We do likewise.

When arguing in the trial court that the ICJ required DYRS to detain G.W., DYRS relied on two ICJ rules: (1) ICJ R. 7-103, which provides that "[j]uveniles shall be returned only after charges are resolved when pending charges exist in the holding[] state, unless consent is given by the holding[] and demanding[] states'

courts and ICJ Offices"; and (2) ICJ R. 6-102.2, which provides that "accused delinquents who have an active warrant shall be detained in secure facilities until returned by the []demanding state." In denying G.W.'s petition for a writ of habeas corpus, the trial court relied upon an advisory opinion issued by the Commission. Advisory Op. 01-2024 (2024). In that advisory opinion, the Commission interpreted ICJ R. 6-102.2 and R. 7-103 to require the holding state to detain a juvenile who is subject to a warrant in another jurisdiction until after the charges in the holding state are resolved or there is consent from the demanding state.

There have been three significant developments since the trial court's ruling. First, the Commission has withdrawn Advisory Opinion 01-2024. Second, the Commission filed an amicus brief in this court taking the position that the ICJ rules did not require G.W.'s detention. Third, the District of Columbia now concedes that the ICJ rules did not require G.W.'s detention.

We agree with the current position of the parties and the amici (the Commission in support of the District of Columbia and the Public Defender Service in support of G.W.) that the ICJ rules at issue did not provide a basis for G.W.'s detention during the period at issue.

First, ICJ R. 7-103 does not speak to detention at all. Rather, it specifies the circumstances in which juveniles may be returned from the holding state (in this

case, the District) to the demanding state. *See id.* ("Juveniles shall be returned only after charges are resolved when pending charges exist in the holding[] state, unless consent is given by the holding[] and demanding[] states' courts and ICJ Offices.").

Second, although ICJ R. 6-102.2 speaks to detention, we hold that this rule did not require (or even authorize) G.W.'s detention during the period at issue.

The ICJ establishes procedures to govern cases where a juvenile in one jurisdiction is subject to a warrant in a different jurisdiction. The jurisdiction where the juvenile is located (the holding state) must take the juvenile into custody and notify the jurisdiction that issued the warrant (the demanding state) within one business day. ICJ R. 7-104(2). The demanding state must then notify the holding state within two business days whether the demanding state intends to "return" the juvenile. ICJ R. 7-104(3). "Return" is not a defined term under the ICJ rules, but the ICJ rules appear to use the term to refer to the demanding state's coming to the holding state to take custody of the juvenile and transport the juvenile to the demanding state. *See, e.g.*, ICJ R. 7-101 (demanding state is responsible for making transportation arrangements for return of juveniles).

In cases in which the juvenile consents to return to the demanding state, which G.W. did in the present case, the demanding state has five business days to effectuate the return of the juvenile to the demanding state. ICJ R. 6-102.10. That period can

be extended a further five days. *Id.* As previously noted, ICJ R. 6-102.2 provides that "accused delinquents who have an active warrant shall be detained in secure facilities until returned by the []demanding state." The parties now agree that the period of detention required by ICJ R. 6-102.2 is tied to the return procedure of which the provision is a part. In other words, the period of detention required by ICJ R. 6-102.2 extends only until the demanding state "returns" the juvenile to itself or until the time period for doing that expires.

We agree with the parties' current interpretation of ICJ R. 6-102.2. That interpretation gives appropriate consideration to the structure of the ICJ rules and the clear purpose of R. 6-102.2. *Cf. generally, e.g.*, *D.C. Metro. Police Dep't v. Porter*, 332 A.3d 534, 538 (D.C. 2025) (when interpreting statutes, court "consider[s] statutory context and structure [and] evident legislative purpose") (internal quotation marks omitted). Moreover, on the contrary view, ICJ R. 6-102.2 would require a potentially lengthy period of detention with no clear end point and no clear purpose. We are not inclined to interpret ICJ R. 6-102.2 as having such consequences. *Id.* (when interpreting statutes, court considers "the potential consequences of adopting a given interpretation") (internal quotation marks omitted).

For the foregoing reasons, we reverse the judgment of the Superior Court.

*So ordered.*